LINK, PETTER & CO. *v.* POLLIE.

1. LICENSES—CORPORATIONS—BLUE SKY LAW—SECURITIES.
   Stock of a .corporation, whether called a right, warrant, or otherwise, is a security within the meaning of the blue . sky law (Act No. 220, Pub. Acts 1923).

2. SAME—SOLICITATION OF SALE UNLAWFUL.
   Solicitation of a sale of a security not having been approved by the Michigan securities commission is unlawful under the blue sky law.

3. SAME—SOLICITATION ESTABLISHED.
   Where the vice president of a brokerage corporation, over the telephone, asked an acquaintance "Won't you buy" certain corporate stock, telling him he "thought he ought to buy," it amounted to solicitation within the meaning of the blue sky law, and it is immaterial that the brokerage company was not at the time employed by the corporation to sell its stock.

4. SAME—BLUE SKY LAW AIMED AT SELLER.
   The blue sky law is aimed at the seller of unapproved securities rather than the purchaser.

5. SAME — BROKER WHO UNLAWFULLY SOLICITS SALE MAY NOT CLAIM VALID CONTRACT AS AGENT OF PURCHASER.
   In an action by a brokerage firm for the purchase price of certain unapproved corporate stock, the sale of which it had solicited in violation of the blue sky law, and which the purchaser refused to accept, it may not claim that the purchaser could lawfully purchase said stock and that, therefore, it only acted as his agent in said transaction, since, because of its unlawful solicitation, it is in no position to assert a valid contract of agency which was voidable at the option of the purchaser.

6. SAME—RESCISSION—TENDER BACK—NOTICE OF SPECIAL DEFENSE EFFECTUATES RESCISSION.
   Notice given by the purchaser with his plea in said action that he would defend specially on the ground that the

---

[1]Licenses, 37 C. J. § 168; [2]Id., 37 C. J. § 170 (Anno); [3]Id., 37 C. J. § 170 (Anno); [4]Id., 37 C. J. § 164 (Anno); [5]Id., 37 C. J. § 170 (Anno); [6]Contracts, 13 C. J. § 681; Licenses, 37 C. J. § 171 (Anno); 15 A. L. R. 262; 24 A. L. R. 524; 27 A. L. R. 1169; 4 R. C. L. Supp. 490; 5 R. C. L. Supp. 412; 6 R. C. L. Supp. 454.

transaction was in violation of the blue sky law was effectual to accomplish rescission; no tender back being necessary where nothing had been delivered.

Error to Kent; Brown (William B.), J.    Submitted October 6, 1927.    (Docket No. 34.)    Decided January 3, 1928.

Assumpsit by Link, Petter & Company against James Pollie for the purchase price of certain corporate stock.    Judgment for plaintiff.    Defendant brings error.    Reversed.

*Laurence W. Smith,* for appellant. ·

*Wicks, Fuller & Starr,* for appellee.

FLANNIGAN, C. J.    Plaintiff, a domestic corporation engaged as an investment banker, is licensed by the Michigan securities commission to deal in securities. Defendant, engaged as a merchant for over 20 years, was not a novice in the purchase and sale of speculative securities.    He and the officers of plaintiff have been familiar from boyhood, and, prior to the transaction here involved, plaintiff acted as his broker in connection with some of his speculative ventures.    About the middle of December, 1925, J. H. Petter, an employee of plaintiff, called on defendant at his meat shop.    After some talk relative to the stock market, defendant said "he would like to make some money on the market if something would come along."    Petter replied "if something came along that looked to our approval" they would call him up.    No particular security was mentioned by either.    Henry Petter, vice president of plaintiff, testified:

"My brother, Jay Petter, had told me about his conversation with Mr. Pollie, and a few days later, on December 18th, I called Mr. Pollie up one night and suggested the purchase to him of American States Securities rights, and he said, 'Well, how much should

I buy?' and I said 'Won't you buy a couple of hundred?' He said, 'Why don't I buy five hundred?' I said, 'All right, if that is what you want to buy we will buy it for you.' So he authorized me to buy for his account five hundred American States Securities rights."

On cross-examination he testified in part:

"I suggested the purchase of 200, and he said 500. * * * I told him that I wanted to help him make some money and I thought he ought to buy 200 and he wanted to know why he should not buy 500."

The day following the telephone conversation related by the vice president, plaintiff bought for, as it claims, or sold to defendant, as he claims, 500 American States Security Corporation rights represented by warrants issued by that company. These so-called rights constituted an option in the holder to continue until January 7, 1926, to subscribe for 500 shares of the stock of the company at prices and on terms set forth in the warrant, which prices and terms are not of present interest. At the time of purchase neither the American States Security Corporation rights, warrants, or stocks had been accepted for filing by the Michigan securities commission, nor had any application for such acceptance been made. The rights were purchased at $6.25. Before they were received by plaintiff the market dropped sharply and defendant refused to accept or pay for them. In making the purchase plaintiff advanced $3,062.50, and, defendant persisting in his refusal to accept, it sold the rights on the open market, realizing $1,212.50. To recover the difference between the sum it advanced plus a commission charge of $62.50 and the amount received on the sale plaintiff brought this suit. The trial judge found plaintiff solicited defendant to make the purchase; that plaintiff acted as defendant's agent in making the purchase; and that the transaction was "in no way influenced or regulated by the so-called blue sky law." Judg-

ment was entered in favor of plaintiff, and the case is here on writ of error sued out by defendant.

The pivotal question is whether on its own showing plaintiff may be held to have solicited defendant to make the purchase. An option privilege to subscribe for stock of the American States Security Corporation, whether called a right, warrant, or otherwise, is a security within the meaning of Act No. 220, Pub. Acts 1923, commonly called the "blue sky law," and the same not having been approved by the Michigan securities commission, solicitation in Michigan of a sale thereof would be unlawful. Subdivision (*d*) of section 2 of the act reads:

"The term 'sale' or 'sell' shall include an agreement to transfer an interest in securities, and an exchange. Any security given or delivered with or as a bonus on account of any purchase of securities, or any other thing, shall be deemed to constitute a part of the subject of such purchase and to have been sold for value. 'Sale' or 'sell' shall also include an attempt to sell, an option of a sale, a solicitation of a sale, a subscription or an offer to sell, directly or by an agent, or by a circular, letter, advertisement or otherwise: *Provided, however,* That nothing herein shall limit or diminish the full meaning of the terms 'sale' or 'sell' as used by or accepted in courts of law or equity."

We are of the opinion the remarks of the vice president in his telephone conversation with defendant in which he asked and importuned defendant to buy by saying: "Won't you buy," and telling him he "thought he ought to buy," amounted to solicitation within the narrowest definition of the term. And it is immaterial that plaintiff at the time was not employed by the security corporation to solicit sale of its rights.

Granted, as contended by plaintiff's counsel, that the statute is aimed at the seller and not the purchaser of unapproved securities (*Edward* v. *Ioor*, 205 Mich. 617 [15 A. L. R. 256]), and that whatever a person may lawfully do if acting in his own right

and on his own behalf he may lawfully delegate to an agent (1 Mechem on Agency [2d Ed.], 48). But to bring the agent within the protection of that rule he must be free to enter into a valid contract of agency. Because of its unauthorized solicitation, plaintiff is in no position to assert a valid contract of agency. The agency contract in this case was voidable at the option of defendant. To hold a licensed dealer may induce in another a desire to purchase an unapproved security by unlawful solicitation, and escape all consequences of his conduct by accepting employment to purchase the same security for the person solicited, would be largely destructive of the law.

The trial judge found there was no valid rescission. The finding would seem to be contrary to the weight of the evidence. The vice president admitted twice on cross-examination the warrants had been rejected by defendant. But the conclusion there was a valid rescission may be put on another ground. The rights were purchased December 19, 1925, and resold about January 6, 1926. This suit was commenced February 23, 1926. With his plea defendant gave notice he would defend specially on the ground the transaction was in violation of the blue sky law. In the meantime there had been no change of conditions. Defendant had not received the rights or anything of value from plaintiff. There was nothing to tender back. The notice of special defense was effectual to accomplish rescission.

The judgment below is reversed and a new trial is granted. Defendant will recover costs of this court.

FELLOWS, WIEST, CLARK, McDONALD, BIRD, and SHARPE, JJ., concurred.

The late Justice SNOW took no part in this decision.