**SECURITIES & EXCHANGE COMMIS-
SION v. CHINESE CONSOL. BENEV.
ASS'N, Inc.**

No. 232.

Circuit Court of Appeals, Second Circuit.
June 6, 1941.

SWAN, Circuit Judge, dissenting.

Chester T. Lane, of Washington, D. C., Gen. Counsel, Christopher M. Jenks and John F. Davis, Asst. Gen. Counsel, Milton V. Freeman, and Orrin C. Knudsen, all of Washington, D. C., for Securities and Exchange Commission, complainant-appellant.

Chadbourne, Hunt, Jaeckel & Brown and Gerald B. O'Neill, all of New York City (William M. Chadbourne and John Holbrook, both of New York City, of counsel), for Chinese Consol. Benev. Ass'n Inc., defendant-appellee.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The Securities and Exchange Commission seeks to enjoin the defendant from the use of any instruments of interstate commerce or of the mails in disposing, or attempting to dispose, of Chinese Government bonds for which no registration statement has ever been made.

The defendant is a New York corporation organized for benevolent purposes having a membership of 25,000 Chinese. On September 1, 1937, the Republic of China authorized the issuance of $500,000,000 in 4% Liberty Bonds, and on May 1, 1938 authorized a further issue of $50,000,000 in 5% bonds. In October, 1937, the defendant set up a committee which has had no official or contractual relation with the Chinese government for the purpose of:

(a) Uniting the Chinese in aiding the Chinese people and government in their difficulties.

(b) Soliciting and receiving funds from members of Chinese communities in New York, New Jersey and Connecticut, as well as from the general public in those states, for transmission to China for general relief.

All the members of the committee were Chinese and resided in New York City. Through mass meetings, advertising in newspapers distributed through the mails, and personal appeals, the committee urged the members of Chinese communities in New York, New Jersey and Connecticut to purchase the Chinese government bonds referred to and offered to accept funds from prospective purchasers for delivery to the Bank of China in New York as agent for the purchasers. At the request of individual purchasers and for their convenience the committee received some $600,000 to be used for acquiring the bonds, and delivered the moneys to the New York agency of the Bank of China, together with written applications by the respective purchasers for the bonds which they desired to buy. The New York agency transmitted the funds to its branch in Hong Kong with instructions to make the purchases for the account of the various customers. The Hong Kong bank returned the bonds by mail to the New York branch which in turn forwarded them by mail to the purchasers at their mailing addresses, which, in some cases, were in care of the defendant at its headquarters in New York. Neither the committee, nor any of its members, has ever made a charge for their activities or received any compensation from any source. The Bank of China has acted as an agent in the transactions and has not solicited the purchase of bonds or the business involved in transmitting the funds for that purpose.

No registration statement under the Securities Act, 15 U.S.C.A. § 77a et seq., has ever been made covering any of the Chinese bonds advertised for sale. Nevertheless the defendant has been a medium through which over $600,000 has been collected from would-be purchasers and through which bonds in that amount have been sold to residents of New York, New Jersey and Connecticut.

Motions for judgment were made by both parties upon pleadings setting forth the foregoing facts. As a result the court below entered a decree denying complainant's motion, granting defendant's motion and dismissing the complaint. The Commission has taken an appeal from the decree, which, in our opinion, ought to be reversed.

It should be observed at the outset that the Commission is not engaged in preventing the solicitation of contributions to the Chinese government, or its citizens. Its effort is only to prevent the sale of Chinese securities through the mails without registry. If that can not be prevented there is nothing to stop Germany, Italy, Japan, or any other nation, as well as China, from flooding our markets with securities without affording purchasers the information which the Securities Act intends to render available for investors in foreign bond issues.

Section 5 of the Act provides as follows:

"Sec. 5 [§ 77e]. (a) Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly—

"(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell or offer to buy such security through the use or medium of any prospectus or otherwise; or

"(2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale."

Section 2(2) of the Act defines a "person" as including both a private corporation and a government.

Section 2(3) of the Act defines a "sale" or "offer to sell" as including: "every contract of sale or disposition of, attempt or offer to dispose of, or solicitation of an offer to buy, a security * * *, for value; except that such terms shall not include preliminary negotiations or agreements between an issuer and any underwriter."

Section 4 provides the following exemptions from the requirements of Section 5 supra:

"Sec. 4 [§ 77d]. The provisions of section 5 [77e] shall not apply to any of the following transactions:

"(1) Transactions by any person other than an issuer, underwriter, or dealer; * * *."

Under Section 2(11) an "underwriter" is defined as: "any person who has purchased from an issuer with a view to, or sells for an issuer in connection with, the distribution of any security, or participates or has a direct or indirect participation in any such undertaking; * * *".

We think that the defendant has violated Section 5(a) of the Securities Act when read in connection with Section 2(3) because it engaged in selling unregistered securities issued by the Chinese government when it solicited offers to buy the securities "for value". The solicitation of offers to buy the unregistered bonds, either with or without compensation, brought defendant's activities literally within the prohibition of the statute. Whether the Chinese government as issuer authorized the solicitation, or merely availed itself of gratuitous and even unknown acts on the part of the defendant whereby written offers to buy, and the funds collected for payment, were transmitted to the Chinese banks does not affect the meaning of the statutory provisions which are quite explicit. In either case the solicitation was equally for the benefit of the Chinese government and broadly speaking was for the issuer in connection with the distribution of the bonds.

The decisions in Securities and Exchange Commission v. Starmont, D.C. Wash., 31 F.Supp. 264, and Securities and Exchange Commission v. Torr, D.C.S.D. N.Y., 15 F.Supp. 315 (reversed on another ground in 2 Cir., 87 F.2d 446), throw some light on the situation before us. In the first case it was held that to create trading in a stock by advertising in a newspaper was selling within the meaning of the Securities Act. In the second case it was held that to recommend purchases through brokers was likewise "selling." In Link, Petter & Co. v. Pollie, 241 Mich. 356, 217 N.W. 60, 61, the Supreme Court of Michigan decided that a broker who recommended to a customer purchases of a stock which had not been qualified under the Michigan Securities Law was a seller within the provision of that law defining a sale as "solicitation of a * * * subscription." It accordingly refused to enforce a subscription on the part of the customer as in violation of a provision forbidding sales of securities not qualified with the Michigan Securities Commission. These decisions indicate that a person who solicits offers to buy securities is a seller within the statutory meaning whether he is in an ordinary legal sense acting for the issuer or the purchaser.

Under Section 4(1) the defendant is not exempt from registration requirements if it is "an underwriter". The court below reasons that it is not to be regarded as an underwriter since it does not sell or solicit offers to buy "for an issuer in connection with, the distribution" of securities. In other words, it seems to have been held that only solicitation authorized by the issuer in connection with the distribution of the Chinese bonds would satisfy the definition of underwriter contained in Section 2(11) and that defendant's activities were never for the Chinese government but only for the purchasers of the bonds. Though the defendant solicited the orders, obtained the cash from the purchasers and caused both to be forwarded so as to procure the bonds, it is nevertheless contended that its acts could not have been for the Chinese government because it had no contractual arrangement or even understanding with the latter. But the aim of the Securities Act is to have informa-

tion available for investors. This objective will be defeated if buying orders can be solicited which result in uninformed and improvident purchases. It can make no difference as regards the policy of the act whether an issuer has solicited orders through an agent, or has merely taken advantage of the services of a person interested for patriotic reasons in securing offers to buy. The aim of the issuer is to promote the distribution of the securities, and of the Securities Act is to protect the public by requiring that it be furnished with adequate information upon which to make investments. Accordingly the words "[sell] for an issuer in connection with the distribution of any security" ought to be read as covering continual solicitations, such as the defendant was engaged in, which normally would result in a distribution of issues of unregistered securities within the United States. Here a series of events were set in motion by the solicitation of offers to buy which culminated in a distribution that was initiated by the defendant. We hold that the defendant acted as an underwriter.

There is a further reason for holding that Section 5(a) (1) forbids the defendant's activities in soliciting offers to buy the Chinese bonds. Section 4(1) was intended to exempt only trading transactions between individual investors with relation to securities already issued and not to exempt distributions by issuers. The words of the exemption in Section 4(1) are: "Transactions by any person other than an issuer, underwriter, or dealer; * * *". The issuer in this case was the Republic of China. The complete transaction included not only solicitation by the defendant of offers to buy, but the offers themselves, the transmission of the offers and the purchase money through the banks to the Chinese government, the acceptance by that government of the offers and the delivery of the bonds to the purchaser or the defendant as his agent. Even if the defendant is not itself "an issuer, underwriter, or dealer" it was participating in a transaction with an issuer, to wit, the Chinese Government. The argument on behalf of the defendant incorrectly assumes that Section 4(1) applies to the component parts of the entire transaction we have mentioned and thus exempts defendant unless it is an underwriter for the Chinese Republic. Section 5(a) (1), however, broadly prohibits sales of securities irrespective of the character of the person making them. The exemption is limited to "transactions" by persons other than "issuers, underwriters or dealers". It does not in terms or by fair implication protect those who are engaged in steps necessary to the distribution of security issues. To give Section 4(1) the construction urged by the defendant would afford a ready method of thwarting the policy of the law and evading its provisions.

It is argued that an injunction ought not to be granted because the interests of a foreign state are involved. But the provisions for registration statements apply to issues of securities by a foreign government. (See Section 2(2) and Section 7.) Section 6(a), moreover, permits a registration relating to securities issued by a foreign government to be signed by the underwriter, which we have held the defendant to be.

It is unreasonable to conjure up all the difficulties that might arise if every attempt to suggest investment in a foreign bond issue were to be treated as a sale requiring a registration statement under the Act. This is a case where there was systematic continuous solicitation, followed by collection and remission of funds to purchase the securities, and ultimate distribution of the bonds in the United States through defendant's aid. We do not think results should be determined by the mere passage of title to the securities in China.

During the last two years five separate consent injunctions have been granted against Chinese Benevolent Associations at the instance of the Commission in situations like the present and a similar injunction was issued from the District Court of Hawaii on January 20, 1939, against a Japanese Patriotic Bond Subscription Society. These things indicate not only that the need of registration of such foreign bond issues is real, but also that there has been a broad acquiescence in the Commission's interpretation of the statute. Securities and Exchange Commission v. Associated Gas & Electric Co., 2 Cir., 99 F.2d 795, 798.

The decree is reversed with directions to the District Court to deny the defendant's motion to dismiss and to issue the injunction as prayed for in the bill of complaint. No costs are allowed.

SWAN, Circuit Judge, dissents with opinion.

742

SWAN, Circuit Judge (dissenting).

I *think* the majority opinion has construed the statute more broadly than its language will permit. In my opinion section 5, as limited by section 4, forbids only conduct by an issuer, underwriter or dealer. Concededly the appellee is neither an issuer nor a dealer. The definition of an underwriter, section 2(11), includes three classes: (a) "any person who has purchased from an issuer with a view to * * * the distribution of any security"; (b) "any person who * * * sells [solicits "an offer to buy", section 2(3)] for an issuer in connection with, the distribution of any security"; and (c) "any person who * * * participates or has a direct or indirect participation in any such undertaking." The appellee can fall only within class (b). To include it within that class gives no meaning to the words "for an issuer". Concededly it has no relationship whatever with the Chinese Government, "the issuer". The extent or success of its solicitations cannot be material; a single solicitation of an offer to buy would be equally within the language. Hence, a single newspaper editorial, published without instigation by the Chinese Government and merely urging the purchase of the bonds in the name of patriotism, would make the newspaper an "underwriter". I cannot believe the statute should be so interpreted. It is my opinion that the decree should be affirmed.