**Clifford A. SCHMID, Plaintiff-Appellant,**

v.

**Henry F. LANGENBERG et al., Defendants-Respondents.**

**No. 36110.**

Missouri Court of Appeals, St. Louis District, Division Three.

Aug. 19, 1975.

Ziercher, Hocker, Tzinberg, Human & Michenfelder, Robert C. Jones, Clayton, for plaintiff-appellant.

Lewis, Rice, Tucker, Allen & Chubb, Richard B. Rothman, St. Louis, for defendants-respondents.

GUNN, Judge.

Plaintiff-appellant was sorely bruised in a stock market transaction and has sought healing balm and recompense through recoupment of his losses from defendants-respondents, who are general partners in the stock brokerage firm of Reinholdt & Gardner, and through whom plaintiff purchased certain stock. Plaintiff sued under § 409.411(a)(1) of the Missouri Uniform Securities Act[1] alleging that defendants had violated § 409.301 by selling plaintiff an unregistered security. Defendants claim that the sale of stock was unsolicited and thereby an exempt transaction under § 409.402(b)(3). Under § 409.301, it is unlawful to offer for sale or to sell in Missouri any unregistered security unless exempted under § 409.402. The exemption section permits the sale of unregistered stock in a non-issuer transaction through a registered broker-dealer pursuant to an unsolicited order if the broker-dealer acts as agent for the purchaser and receives no compensation except from the purchaser. The critical issue as submitted to the jury was whether the sale of an unregistered stock to plaintiff was solicited by defend-

1. Statutory references are to RSMo 1969. The Missouri Uniform Securities Act is found in §§ 409.101–409.418. § 409.102 was amended in 1971.

ants. The jury found that it was not and awarded its verdict to defendants. On appeal, we consider the same issue as to whether the sale of stock was by unsolicited order under § 409.402(b)(3). We review the evidence in the light most favorable to the jury verdict and resolve all reasonable inferences in favor of the prevailing party. *Parker v. Stern Bros. & Co.*, 499 S.W.2d 397 (Mo.1973); *Ritter v. Lindberg Acoustics, Inc.*, 501 S.W.2d 207 (Mo.App.1973). We find no prejudicial error by the trial court and conclude that the jury could find as a fact that the sale of stock to plaintiff was unsolicited. We therefore affirm the judgment.

The unintended conception of this lawsuit occurred in early October, 1969 when plaintiff and defendant James Johnson, a partner in Reinholdt & Gardner, were having lunch to discuss plaintiff's personal and family stock portfolios. Plaintiff, no callow fellow to the ways of stock investment, was president of a bank and prior to joining his bank he had been an investment analyst for a trust company. Plaintiff and Johnson had been acquaintances since their high school days, and plaintiff had bought and sold stocks through Johnson for at least three years. During the luncheon, the conversation drifted to a stock which was unregistered in Missouri, originally known as Motel Managers Training School and later as Diversified Educational Systems, Inc. (DESI).

It is fundamental to the question of solicitation to examine how the discussion was initiated. Johnson testified that it was not uncommon for plaintiff to ask about Johnson's personal investments, and at the luncheon, plaintiff did inquire about Johnson's personal investments. In response to the inquiry, Johnson related that he told plaintiff that he was investing in a stock that was not "Blue Skyed" in Missouri;

that since the stock was not registered in Missouri, Johnson "could not talk to people about it." Plaintiff was apparently intrigued and expressed an interest in the stock, so Johnson suggested that plaintiff ask him specific questions about it. At trial, Johnson testified that he held the belief that he could properly respond to questions of an unregistered stock if asked by family and friends. During the luncheon, Johnson did answer plaintiff's specific questions about the DESI stock and at plaintiff's request gave plaintiff a brochure on the stock prepared by another stock brokerage house. Plaintiff testified that at the luncheon he was fully aware that the stock was unregistered; that he understood Johnson was not able to solicit sales of the stock; that Johnson had mentioned the possibility of having plaintiff sign a non-solicitation letter,[2] which plaintiff testified that he "most probably would have signed if given such a letter" by Johnson.

Within a day or two after the luncheon, on October 9, plaintiff telephoned Johnson and ordered a purchase of 300 shares of DESI stock which was selling at the time for $19 per share. After the initial purchase, plaintiff continued to inquire about the condition of the stock, and, influenced by its excellent performance, on November 14, 1969, plaintiff placed an order with Johnson for another 200 shares of DESI stock at $26 per share. The stock continued to ascend and reached its pinnacle in the thirties. But the sojourn to the summit was transitory, for in the late winter of 1970 the stock plummeted in swift and scarped descent. In April, 1970 plaintiff sold the 200 shares at $10 per share and in November, 1970 with the stock approaching its nadir, plaintiff sold the original 300 shares for a total of $235.49. Plaintiff thereby claims a loss from the two transactions of $8,713.51 plus attorney's fees. In the transactions, defendants received no compensation except from plaintiff.

2. A non-solicitation letter, according to plaintiff's testimony and understanding, would state that the plaintiff had initiated the order and had not been solicited for the sale of DESI stock.

The trial court withdrew from the jury's consideration the issue of the second purchase of the 200 shares of stock, having found as a matter of law that the second purchase was unsolicited, and the jury returned a verdict for defendants finding that the first purchase of 300 shares of DESI stock was unsolicited. Plaintiff appealed, alleging that the trial court erred: 1) in withdrawing from the jury the issue of the second purchase of stock; 2) in failing to find as a matter of law that the first purchase was solicited by defendants; 3) in failing to admit into evidence a document circulated by Reinholdt & Gardner warning its employees not to solicit sales of unregistered stock; and 4) in failing to sustain plaintiff's objection to defendants' counsel's reference to the second transaction in closing argument.

Plaintiff's first contention is that the trial court erred in giving an MAI–34.01 modified withdrawal instruction on the issue of the second purchase of 200 shares of DESI stock. Plaintiff contends that he had made a submissible case as to the purchase of 200 shares of stock in November, 1969 and that the jury could have found as a matter of fact that the second sale was solicited. Plaintiff argues that his plan, as made known to Johnson, had been to make a $10,000 total purchase of DESI stock and that the initial purchase of 300 shares was only the first step in implementing the plan; that due to the admitted speculative nature of the stock plaintiff considered it prudent to initially make only a partial purchase of the stock; that the second purchase, and final step of his plan, was for the purpose of averaging plaintiff's costs. Plaintiff's testimony at trial that the two purchases were part of one scheme is substantially less clear than plaintiff suggests on appeal. When asked whether he had indicated to Johnson what the total purchase would be, plaintiff responded: "I don't remember a specific figure. I do remember it was usually my thinking relative to any purchase that I should keep my investment of $10,000.00 or maybe a little bit less." The foregoing is scarcely a ringing affirmation that communication was made to Johnson that there was to be a total investment of $10,000 by plaintiff in DESI stock and that the first purchase was merely a part of the total plan with a second purchase to follow. More to the point and justification for the withdrawal instruction was plaintiff's specific admission at trial that he was "not solicited with respect to the second purchase of the 200 shares."

The intended use of withdrawal instructions, as noted in the Supreme Court Committee's general comment to MAI 34.-01, is when the trial court has received evidence upon an issue which is later abandoned through choice or by reason of inadequate proof for final submission to the jury. Withdrawal instructions are used where the evidence might raise a false issue. *Temple v. Atchison, Topeka & Santa Fe Ry. Co.,* 417 S.W.2d 97 (Mo.1967); *De Moulin v. Kissir,* 446 S.W.2d 162 (Mo.App.1969). And the giving or refusal of withdrawal instructions is within the discretion of the trial court. *Helming v. Adams,* 509 S.W.2d 159 (Mo. App.1974). Under the circumstances of this case we can find no abuse of discretion by the trial court's giving the withdrawal instruction on the second stock purchase. The second purchase of DESI stock, separated by a month's time from the first purchase, was initiated solely by plaintiff after observing the stock increase in value during that month. The matter of the second purchase was a false issue and the trial judge was justified in withdrawing that issue from the jury's consideration.

Referring to *Price v. Bangert Bros. Road Builders, Inc.,* 490 S.W.2d 53 (Mo.1973) and *Scott v. Thornton,* 484 S.W.2d 312 (Mo.1972), plaintiff argues that the withdrawal instruction was tantamount to a directed verdict and that no verdict should be directed for a party having the ultimate burden of proof; that under

§ 409.402 defendants have the burden of proving the sales exemption. But there is a qualitative deficiency in plaintiff's thesis due to plaintiff's acknowledgment that the second sale was not solicited. Defendants do have the burden of proving that the sale of stock was exempted from the statute's prohibition under § 409.402(d). But even if the withdrawal instruction is viewed as a directed verdict in favor of defendants, there is no proscription against a directed verdict. As a general rule the party having a burden of proof is not entitled to a directed verdict. But plaintiff specifically admitted at trial that the second stock purchase was unsolicited, and the evidence is clear that the order was placed without inducement by defendants. Hence, a verdict could properly have been directed against him on this issue, and there was no error in giving the withdrawal instruction as to the second stock purchase, the admission having lifted the weight of the burden of proof. *Commerce Trust Co. v. Howard,* 429 S.W.2d 702 (Mo.1968); *Charles F. Curry & Co. v. Hedrick,* 378 S.W.2d 522 (Mo.1964). See also *Auffenberg v. Hafley,* 457 S.W.2d 929 (Mo.App.1970).

Plaintiff's second contention is that the trial court erred in giving an instruction allowing the jury to find as a matter of fact that the first sale of DESI stock was unsolicited. He maintains that there was solicitation of the first sale as a matter of law. Again, the issue here is whether the first sale of the stock was unsolicited and therefore exempt under § 409.402(b)(3) from the Missouri Uniform Securities Act general interdiction against the sale of unregistered securities. The statute does not define "solicitation," so we must look elsewhere to determine if the trial court was correct in allowing the jury to decide as a matter of fact that there was no solicitation.

There are no Missouri cases involving the sale of stock which help us to define the word "solicitation." An Illinois case involving a Blue Sky statute similar to Missouri's gives the following general definition:

"A solicited sale is one in which the salesman 'actively encourages the purchase or sale of a security by a client.' Unsolicited sales, in which a customer requests that a security be purchased for him and the salesman just takes the order and acts as agent for the purchaser, are not prohibited." *Home Indemnity Co. v. Reynolds & Co.,* 38 Ill.App.2d 358, 187 N.E.2d 274, 279 (1962).

In *Link, Petter & Co. v. Pollie,* 241 Mich. 356, 217 N.W. 60 (1928), it was held that there was a "solicitation" within the narrowest meaning of the Michigan Blue Sky law when an investment banker "importuned" a customer on the phone by saying "Won't you buy?" and telling him he "thought he ought to buy." These two cases, although not binding, help us view our case with some perspective. Although Johnson was the first to mention an unregistered stock, the reference was in response to plaintiff's inquiring as to what Johnson "was doing and how are you [Johnson] doing" in the market. Johnson merely proceeded to answer plaintiff's questions about the security. It cannot be said unequivocally that defendant "actively encouraged the purchase" by plaintiff as the Home Indemnity Co. case specified. And, of course, the defendant did nothing resembling the encouragement of the sale in the Link case.

The federal securities case of *Sargent v. Genesco, Inc.,* 492 F.2d 750 (5th Cir. 1974), is meaningful and sheds light on the issue of whether a solicitation is a question of fact or law. In *Sargent,* it was held that whether a particular communication would be a solicitation of a proxy within the meaning of the federal statutes regulating proxy solicitations would constitute a question of fact and depend upon the nature of the communication and surrounding circumstances. *Bittiker v. State Bd. of Registration for Healing Arts,* 404 S.W.2d 402 (Mo. App.1966), offers a detailed definition of "solicitation" as used in a Missouri statute. The statute in the *Bittiker* case, rather than being a Blue Sky law, pertained to the

revocation of physicians' licenses for "soliciting" patronage. The court emphasized that in construing Missouri statutes, nontechnical words and phrases must be taken in their "plain or ordinary and usual sense." The court found that "solicitation" was not a word of technical meaning as used in the statute under consideration and that all reasonable persons would regard the word "soliciting" in that particular context as "meaning to ask for or to request something or action in language which convinces that the asking or requesting is being done in earnest and that the solicitor wants results." The court adopted the definition in Webster's International Dictionary as the "plain or ordinary and usual sense" of the word:

> "To awake or excite action; to rouse a desire in; to summon; to appeal to; to invite; allure. To endeavor to obtain by asking or pleading. To urge the claims of; to advocate."

We find that the word "unsolicited" in the Missouri Uniform Securities Act should also be used in a non-technical sense. In view of the definitions offered in *Bittiker* and the foregoing cases we have cited, and treatment of solicitation in the *Sargent* case involving federal securities law, we are convinced that the question of solicitation of the first stock purchase presented a fact issue which was correctly submitted to the jury.[3]

■ We hold further that there was substantial evidence to uphold the jury's determination that the sale was unsolicited. This is particularly true since plaintiff admitted on cross-examination that he would probably have signed a non-solicitation letter, indicating that the sale was unsolicited, had such a letter been presented to him.

Since there is substantial evidence to uphold the jury's determination, we shall not interfere with that decision. *Bower v. Hog Builders, Inc.*, 461 S.W.2d 784 (Mo.1970); *Stevens v. Wetterau Foods, Inc.*, 501 S.W.2d 494 (Mo.App.1973).

■ Plaintiff's third assignment of error is that the trial court erred in failing to admit a certain document into evidence. The document in question was a sales memorandum prepared by Reinholdt & Gardner which warns agents of the company to carefully follow the Blue Sky statutes when dealing with unregistered stock. Counsel for the defendants objected to the exhibit on the grounds it was a reference to Michigan law and therefore immaterial; that it dealt with a legal conclusion. The objection was sustained. Plaintiff correctly points out that although the memorandum was expressly "adapted from a Notice in the Securities Bulletin, State of Michigan," it does specifically deal with the Missouri Blue Sky statute. Plaintiff contends that the memorandum should have been admitted into evidence, since it offered guidelines for compliance with the Missouri statute and was therefore relevant. Upon examination of the proposed exhibit we conclude that it does not offer any clear guidelines for compliance with Missouri's Uniform Securities Act. The memorandum merely warns that "it may be difficult to determine whether or not the element of solicitation is present," and that agents should use the utmost care in dealing with unregistered securities. Although Johnson testified at trial that it was open to question whether he complied with the policies set out in the memorandum, we do not find that the proffered exhibit was necessarily relevant to the question in issue. Even if the memorandum had set forth definite principles for

---

**3.** Other definitions of "solicit" are:

Solicit means to entreat, importune, to plead for, to tempt, beseech, crave, implore. *Urick v. Appeal Bd. of Michigan Unemployment Compensation Commission,* 325 Mich. 599, 39 N.W.2d 85, 87 (1949); To entreat, importune, to approach with a request or

plea, to seek actively. *Bigelow Co. v. Waselik,* 133 Conn. 304, 50 A.2d 769, 770 (1946); To appeal for something; to apply to for obtaining something; to ask earnestly; to entreat, to implore, to importune; to plead for; to try to obtain; Black's Law Dictionary, 4th Ed. Rev. 1968.

defendants' agents to follow and which Johnson had clearly violated (which is not the case here), that fact would not be conclusive that a violation of the Missouri Uniform Securities Act had occurred. As defendants emphasize, the memorandum is not the law of Missouri, and since it did not offer a clear set of ·rules for defendants' agents to follow when dealing with unregistered stock, it is less helpful to try to measure Johnson's conduct against any company standard. Since the probative value of this evidence was questionable, admission of the memorandum was within the sound discretion of the trial court. *State ex rel. State Highway Com'n v. City of Sullivan*, 520 S.W.2d 186 (Mo.App.1975); *Cardello v. Bauer*, 433 S.W.2d 81 (Mo.App.1968). We do not find any abuse of the trial judge's discretion in rejecting the exhibit and will not interfere with his decision as to the admissibility of the memorandum. *State ex rel. State Highway Com'n v. City of Sullivan*, supra.

Plaintiff's final contention of error concerns defendants' counsel's reference in his closing argument to the second purchase of stock by plaintiff. Objection was made when defendants' counsel reminded the jury of the second purchase of DESI stock which had been withdrawn from the jury's consideration. Defendants' counsel mentioned to the jury that plaintiff had held the stock as long as it was increasing in value, bought 200 shares more, then sold the 200 shares when the value decreased and retained the initial 300 shares for a longer period of time.

It is indeed true, as plaintiff adroitly argues, that in closing argument counsel should not present or draw inferences from matters not in evidence. *Davis v. City of Independence*, 404 S.W.2d 718 (Mo.1966). Nor, should there be conflict between closing argument and submitted instructions. *Moss v. Mindlin's, Inc.*, 301 S.W.2d 761 (Mo.1957). But as stated in *Beesley v. Howe*, 478 S.W.2d 649 at 652, 653 (Mo.1972):

> "The regulation of argument is a matter largely within the discretion of the trial court and it is the policy of the law to indulge a liberal attitude in ruling contentions relating to jury argument."

The trial court possesses a coign of vantage which best permits it to observe the proceedings and judge the prejudicial force exerted on the jury by counsel's comments. In *Cassin v. Theodorow*, 504 S.W.2d 203 (Mo.App.1973),[4] the gauge for measuring whether argument of counsel required reversal of a jury's verdict was set forth as follows, l.c. 205:

> ". . . the applicable rule is as stated in *Handshy v. Nolte Petroleum Company*, 421 S.W.2d 198, 202 (Mo.1967), where the court noted that the trial judge is in the best position to determine the effect of an alleged prejudicial argument and stated: '. . . we are inclined to defer to his rulings unless it appears that the protested arguments so patently pass legitimate bounds as to be manifestly prejudicial and the ruling of the trial court thereon a clear abuse of discretion.'"

Defendants' brief reference to the second purchase of DESI stock cannot be held to have "so patently passed legitimate bounds." Therefore, plaintiff's case as to the first purchase, which was simply described, was not so manifestly prejudiced as to require a reversal of the trial court. *Cassin v. Theodorow*, supra. This is particularly true since evidence of the second transaction had been presented to the jury by both parties, even though later withdrawn from consideration. The trial judge had the opportunity to consider the possible prejudice of this aspect of the closing argument on motion for new trial and by overruling the motion determined that the argument did not improperly influence the jury. We defer to the trial court's discre-

4. See also *Carrel v. Wilkerson*, 507 S.W.2d 82 (Mo.App.1974).

tion in this regard and find under the circumstances of this case that the comments of defendants' counsel in closing argument were not manifestly prejudicial. Nor was there a clear abuse of the trial court's discretion in denying plaintiff's motion for new trial based on closing argument of defendants' counsel. *Sestrich v. R. H. Macy & Co., Inc.*, 493 S.W.2d 52 (Mo.App.1973). See also *Paris v. Keefhaver,* 512 S.W.2d 892 (Mo.App.1974).

The judgment is affirmed.

SIMEONE, P. J., and McMILLIAN, J., concur.