# STATE OF MICHIGAN

# COURT OF APPEALS

MENHENNICK FAMILY TRUST, by PAUL
MENHENNICK, Individually and as Trustee,
DENNIS MENHENNICK, and PATRICK
MENHENNICK,

       Plaintiffs-Appellees,

and

ILEAN MENHENNICK IRREVOCABLE
TRUST, by JENNIFER WAGENER, Trustee,

       Plaintiff/Counterdefendant-
       Appellee,

and

MENHENNICK ENTERPRISES, INC., also
known as SHAREHOLDERS OF MENHENNICK
ENTERPRISES, INC., and HARVEY OIL
COMPANY, INC.,

       Plaintiffs,

v

TIMOTHY MENHENNICK,

       Defendant/Counterplaintiff-
       Appellant.

FOR PUBLICATION
November 27, 2018
9:10 a.m.

No. 342391
Marquette Circuit Court
LC No. 15-053627-NZ

Before: MURPHY, P.J., and SAWYER and SWARTZLE, JJ.

PER CURIAM.

This case presents a question of first impression, namely whether MCL 450.1421(6) precludes the voiding of a shareholder's proxy on the basis of incompetence unless the shareholder had been declared incompetent before the proxy was given. We conclude that it does not.

-1-

Plaintiff Harvey Oil is a home heating fuel business that primarily sells fuel oil and propane. It also operates convenience stores with gas stations. When created, Harvey Oil issued 130 shares of stock, which were jointly owned by Alva and Ilean Menhennick. Their children, Gary, Dennis, Paul, Patrick and Timothy, all worked in the business at one time or another. Dennis took over as general manager after Alva's death in January 1993. Around that time, some of the assets of Harvey Oil were spun off into a new company, Menhennick Enterprises. Sixty-five shares of each company were held by the Menhennick Family Trust and 65 shares each of both companies were held by the Ilean Menhennick Family Trust. Thereafter, Ilean, through her trust, made gifts of 10.4 shares of each company to each of her five sons. After Gary's death in 2000, his shares were transferred back to the trust.

A dispute arose over the voting of the shares held by the Menhennick Family Trust, over which Paul and Ilene were co-trustees. This dispute was resolved by the Probate Court in 2008 when it ruled that each co-trustee would vote half of the shares. Accordingly, from 2008 until 2013, for each company, Ilean voted 56.9 shares of the 130 shares outstanding held by the two trusts, Paul voted 42.9 shares (32.5 shares held by the trust and 10.4 shares held by him individually), while Dennis, Timothy, and Patrick each voted 10.4 shares held by themselves.

Other disputes over the years continued regarding the management of the company and whether to sell assets. The basis for the instant dispute arose when defendant obtained proxies from Ilean on December 11, 2013, in advance of the annual shareholders' meeting on December 12. This gave defendant the power to vote 66.3 shares of the 130 shares for both companies. In other words, he now had majority control. Defendant used this power to amend the by-laws to provide for a single-member board of directors, with himself as the sole director. Defendant subsequently issued an additional 110 shares in both companies, which he purchased, making him the majority shareholder in both companies even without the shares he voted by proxy.

This eventually led to the instant lawsuit, filed in 2015, challenging various actions taken by defendant, including the by-law amendment and the issuance of the additional stock. At the heart of the dispute was defendant's obtaining Ilean's proxies, which plaintiffs argue was invalid because Ilean was incompetent at the time. Defendant moved to preclude the attack on the proxies on the basis that Ilean had not been previously adjudged incompetent before she signed the proxies. The trial court denied the motion. Later, following a bench trial, the court found that Ilean lacked the mental capacity to grant the proxies. The court additionally found that defendant had exercised undue influence over Ilean to obtain the proxies. The court additionally found a breach of defendant's fiduciary duties to the companies and the shareholders. The court declared the proxies void, as well as the amendments to the by-laws. It ordered the parties returned to their relative interests owned prior to the issuance of the proxies. Defendant now appeals and we affirm.

The principal issue in this case is the effect of MCL 450.1421(6) on the challenge to the validity of the proxy. That statute provides as follows:

> The authority of the holder of a proxy to act is not revoked by the incompetence or death of the shareholder who executed the proxy unless, before the authority is exercised, written notice of an adjudication of the incompetence or

death is received by the corporate officer responsible for maintaining the list of shareholders.

Defendant argues that, under this provision, Ilean's incompetency cannot be the basis for holding the proxy invalid because she was not adjudicated incompetent and notice given of that fact before the proxy was exercised. Plaintiffs argue that this provision does not restrict the ability to challenge whether the proxy was valid in the first place. We agree with plaintiffs.

We review de novo issues of statutory and contractual interpretation. *Madugula v Taub*, 496 Mich 685, 695; 853 NW2d 75 (2014). The flaw in defendant's argument is that the question in this case is not whether Ilean's incompetency operated to revoke the proxies; rather, it is whether the proxies were void ab initio due to her incompetency. The purpose of MCL 450.1421(6) would seem to be to link a notice requirement to the basic principle that the death or incompetence of a principal revokes the authority of the agent. See, e.g., *In re Estate of Capuzzi*, 470 Mich 399, 402; 684 NW2d 677 (2004) ("It is also well-settled that the death of the principal revokes the authority of the agent . . . ."). That is, MCL 450.1421(6) operates as a requirement for notice of the death or incompetence to the appropriate corporate officer before the proxy is deemed revoked by the death or incompetency of the shareholder. But, more important to the resolution of this case, it does not address the validity of the proxy in the first place or the authority of a court to declare a proxy void.

In sum, MCL 450.1421(6) does not restrict the trial court's authority to determine that the proxies were never validly issued in the first place. Accordingly, we must turn to defendant's next issue, that the trial court erred in finding that Ilean was incompetent at the time she executed the proxies. We are not persuaded that the trial court clearly erred.

We review for clear error the trial court's findings of fact following a bench trial and review de novo its conclusion of law. *Trader v Comerica Bank*, 293 Mich App 210, 215; 809 NW2d 429 (2011). A finding is clearly erroneous if there is no evidentiary support for the finding or, after reviewing the entire record, this Court is definitely and firmly convinced that the trial court made a mistake. *Augustine v Allstate Ins Co*, 292 Mich App 408, 424; 807 NW2d 77 (2011). This Court gives regard to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it. *In re Clark Estate*, 237 Mich App 387, 395-396; 603 NW2d 290 (1999).

Whether a person was mentally competent is determined by a preponderance of the evidence. *Grand Lodge v Brown*, 160 Mich 437, 445; 125 NW 400 (1910). Generally, "whatever a person may lawfully do, if acting in his own right and on his own behalf, he may lawfully delegate to an agent." *Link, Petter & Co v Pollie*, 241 Mich 356, 359-360; 217 NW 60 (1928). However, in order to do so, the person "must be free to enter into a valid contract of agency." *Id*. at 360. "The test of mental capacity to contract is whether the person in question possesses sufficient mind to understand in a reasonable manner the nature and effect of the act in which the person is engaged." *In re Erickson Estate*, 202 Mich App 329, 332; 508 NW2d 181 (1993). A person is too mentally unsound to contract if "the person had no reasonable perception of the nature or terms of the contract." *Id*. A person may be incapable of conducting business successfully and still be mentally competent. *Id*. at 333.

-3-

Testimony was offered by family members and Ilean's physicians. Dr. Fletemier testified that in April 2013, Ilean had difficulty following directions to do basic and simple things. Dr. Politi testified that Ilean could not recall three words after a minute. Dr. Fletemier testified that Ilean was diagnosed with moderate dementia in May 2013, which she described as a "pretty significant impairment" and only moderate in comparison to severe dementia, which renders a person nonverbal and unable to function. Patrick described his mother as talking to people who were not there and that she could not correctly place a phone call even while looking at the written phone number.

Defendant testified that Ilean read the proxies and signed them. He did not recall discussing the proxy with Ilean the day she signed them, and he did not recall her asking questions. Defendant believed that Ilean understood that if she signed the proxies, she would not have to attend the shareholders' meeting.

Patrick testified that, the day after the shareholders' meeting, when asked if she had signed a proxy, Ilean only knew that she had signed some papers for the business. Dr. Fletemier saw Ilean less than two weeks later. At that time, Ilean's "talk was very vague." She could not interact in a complex conversation. She was not capable of complex thought. Dr. Fletemier testified that one of Ilean's issues was "severe memory impairment," such that Ilean had a limited ability to even recall the events of her day-to-day routine. Dr. Fletemier testified that Ilean could not "understand business complexities with a moderate dementia." Dr. Fletemier testified that while Ilean may have been able to sign her name to documents, "would she truly understand it? No." Ilean would not have been able to understand a business meeting to the extent that she would be able to decide whether she would be comfortable having someone else make decisions for her. In her condition, Ilean would not necessarily have understood proxy and voting ramifications, and she even might not have understood the concept of voting.

The trial court found that Ilean lacked the mental capacity to understand the nature of the proxies she signed. Specifically, it found that Ilean could not have understood the ramifications of what she signed, and the day after the meeting, Ilean did not understand what she had signed or the ramifications of naming defendant as her agent. Accordingly, it determined that Ilean had lacked the capacity to understand the nature and effect of the proxies she signed when Timothy presented them to her one day before the shareholders' meeting.

We are not persuaded that the trial court clearly erred. There was substantial evidence of Ilean's incompetence. Moreover, even if the trial court accepted defendant's testimony as true, it did not establish that Ilean understood that the nature of the proxy agreements was that defendant would vote for her at the shareholders' meeting. Defendant testified that he believed that Ilean understood that if she signed the proxies, she would not have to attend the shareholders' meeting. This is not the same as understanding that, by signing the proxies, Ilean would be allowing Timothy to vote for her at the meeting. Nor are we persuaded by defendant's argument that Ilean's ability to execute a power of attorney and patient advocate documents in June 2013 establishes her competency. First, competency in June does not necessitate the conclusion that competency remained in December. Indeed, there was testimony that Ilean's condition had rapidly deteriorated in the second half of 2013. Second, the nature of the documents is different. Just because she could adequately understand the nature of the power of attorney and patient

advocate documents to be competent to execute them does not necessarily mean that she could understand the nature and effect of the proxies.

Because we have concluded that there was adequate basis for the trial court to void the proxies based upon incompetence, we need not address defendant's argument that the trial court erred in finding undue influence. Similarly, we need not address defendant's arguments regarding the trial court's alternative findings regarding breach of fiduciary duties, failure to provide information to the shareholders, and the issuance of the additional stock for defendant's purchase. Because we affirm the trial court's determination that the proxies were void, all actions taken by defendant at the December 2013 shareholders' meeting and thereafter are invalid. That is, the trial court properly ruled that the parties were to be returned to the status quo ante.

Affirmed. Plaintiffs may tax costs.


/s/ William B. Murphy
/s/ David H. Sawyer
/s/ Brock A. Swartzle