*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* NOAH J. SCOBY.

---

CLAIRE SPRICH,

      Petitioner-Appellee,

v

NOAH J. SCOBY,

      Respondent-Appellant.

UNPUBLISHED
June 23, 2022

No. 359756
Kent Probate Court
LC No. 21-930339-MI

---

Before: RONAYNE KRAUSE, P.J., and M. J. KELLY and YATES, JJ.

PER CURIAM.

Respondent appeals by right the probate court order requiring him to receive involuntary mental health treatment. Following a hearing on the petition for mental health treatment, the probate court found respondent to be a "person requiring treatment" under MCL 330.1401. Respondent argues that the probate court erred because (I) he was not a person who required treatment, (II) he was not ensured a jury trial, and (III) he was not ensured the ability to call witnesses to testify on his behalf. We affirm.

## I. BACKGROUND

Between late November and early December of 2021, respondent was taken to the emergency department at Spectrum Health Butterworth Hospital, by his father, after complaining that his family was trying to poison him.[1] On December 3, 2021, petitioner, a medical social worker at the hospital, filed a petition for involuntary mental health treatment. On December 6, 2021, after admitting respondent to the hospital, Dr. Puneet Singla, a licensed psychiatrist, conducted a psychiatric evaluation of respondent and diagnosed him with paranoid schizophrenia. Respondent told Dr. Singla he believed he was being poisoned by family members and he was

---

[1] The exact date respondent was brought to Spectrum Health Butterworth Hospital is unknown.

being exposed to radioactivity.  Dr. Singla testified, on petitioner's behalf, that respondent would get into verbal altercations with medical personnel regarding his treatment.

On December 14, 2021, the probate court held a bench trial regarding the petition for respondent's involuntary hospitalization.  At this bench trial, Dr. Singla testified on petitioner's behalf that respondent was disorganized, easily irritable, and had gotten very angry with medical staff by getting in verbal altercations with them.  Dr. Singla recommended that respondent continue to receive involuntarily inpatient treatment with antipsychotic medication.  Respondent also testified, stating that he did not have paranoid schizophrenia, did not need medication, and only marginally suffered from mental illness.  Respondent refused to take the medication that was prescribed to him, because it made him "feel like a zombie."

The probate court found that respondent was a person requiring medical treatment pursuant to MCL 330.1401(1)(a), (b), and (c), and it ordered respondent to receive involuntary hospitalization for 60 days.  This appeal followed.

## II.  STANDARD OF REVIEW

"This Court reviews for an abuse of discretion a probate court's dispositional rulings and reviews for clear error the factual findings underlying a probate court's decision." *In re Portus*, 325 Mich App 374, 381; 926 NW2d 33 (2018) (quotation omitted).  This Court explained in *Portus*:

> An abuse of discretion occurs when the probate court chooses an outcome outside the range of reasonable and principled outcomes.  A probate court's finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." [*Id.* (quotation and citation omitted).]

The clear error standard requires consideration of the entire record.  *Menhennick Family Trust v Menhennick*, 326 Mich App 504, 509; 927 NW2d 741 (2018).  This Court reviews matters of statutory interpretation de novo.  *In re Portus*, 325 Mich App at 381.  A trial court's decision whether to grant an untimely request for a jury trial is reviewed for an abuse of discretion.  *In re Hubel*, 148 Mich App 696, 697-701; 384 NW2d 849 (1986).[2]  "An abuse of discretion occurs when the probate court chooses an outcome outside the range of reasonable and principled outcomes." *In re Portus*, 325 Mich App at 381 (quotation marks and citation omitted).

---

[2] Even though this Court is not strictly required by MCR 7.215(J)(1) to follow published Court of Appeals cases decided before November 1, 1990, those decisions are still entitled to deference.  See *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018) ("[I]t [is] reasonable to draw the negative inference that we are not *strictly required* to follow uncontradicted opinions from this Court decided before November 1, 1990, but we think they are nevertheless considered to be precedent and entitled to significantly greater deference than are unpublished cases.").

III. PERSON REQUIRING TREATMENT

Respondent argues that the probate court erred in determining he was a "person requiring treatment" under all three criteria defined by MCL 330.1401(1). We disagree.

A. CONSIDERING PAST CRIMINAL CONVICTIONS

First, respondent argues that the probate court erred by considering respondent's past criminal convictions when determining if he posed a risk of harm to himself or to others under MCL 330.1401(1)(a). Under this subsection, the statute states:

An individual who has a mental illness, and who as a result of that mental illness can reasonably be expected within the near future to intentionally or unintentionally seriously physically injure himself, herself, or another individual, and who has engaged in an act or acts or made significant threats that are substantially supportive of the expectation.

There is no language in the statute that prohibits the probate court from considering respondent's past actions and convictions that occurred before this current involuntary treatment. Furthermore, respondent ignores that, even though the probate court inquired into respondent's past criminal activity, the probate court only considered the testimony regarding respondent's current actions that lead to his involuntary hospitalization. Evidence reveals respondent thought that his family was trying to poison him, and Dr. Singla testified that respondent was threatening the medical staff while also being irritable and unpredictable during his treatment. These were the actions that the probate court considered when it determined that respondent was a person requiring treatment pursuant to MCL 330.1401(1)(a).

Further, respondent argues that the probate court erred by determining that his actions were indicative of respondent being a "risk of harm," because the testimony regarding his actions was conclusory. Even though Dr. Singla testified that he did not believe that respondent was a direct threat to himself, Dr. Singla went on to state that respondent could be a threat to others because he was unpredictable, irritable, and would yell threats at nurses. Additionally, respondent confirmed that he had gotten into an argument with a nurse who was treating him because the nurse stated that they would not be testing his blood for toxins.

Dr. Singla also confirmed that respondent had not gotten into any physical altercations with medical staff while he was in treatment, and respondent denied that he would physically harm anyone. However, evidence may be clear and convincing even if it was contradicted. *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020).

Consequently, we are not left with a definite and firm conviction that a mistake had been made when the probate court made its determination on the factual findings, and it is not outside the range of reasonable and principled outcomes that respondent was a person requiring treatment pursuant to MCL 330.1401(1)(a).

Because MCL 330.1401(1) only requires one statutory definition to be met to establish a person requiring treatment, we can affirm the trial court on this ground alone. However, for completeness, we will consider all three criteria under the statute.

## B. UNABLE TO ATTEND TO BASIC NEEDS

Respondent also argues that the probate court erred by concluding he was a person requiring treatment because there was no evidence to substantiate that he was unable to attend to his basic physical needs pursuant to MCL 330.1401(1)(b). Under this subsection, the statute states:

> An individual who has mental illness, and who as a result of that mental illness is unable to attend to those of his or her basic physical needs such as food, clothing, or shelter that must be attended to in order for the individual to avoid serious harm in the near future, and who has demonstrated that inability by failing to attend to those basic physical needs.

In his testimony, Dr. Singla stated respondent was "not able to" perform the activities of daily living, because respondent is "very disorganized" and "gets—very angry, irritated easily." Dr. Singla did not expand into what activities of daily living respondent would be unable to perform. On appeal, respondent argues that there is no clear and convincing evidence to show that he is unable to perform such basic needs. However, we must consider the record as a whole in determining whether respondent is unable to attend to his basic physical needs. See *Menhennick Family Trust*, 326 Mich App at 509.

Respondent did not accept or understand his paranoid schizophrenia diagnosis, and he does not want to take the prescribed antipsychotic medication. Because respondent has refused to take the prescribed antipsychotics, this has caused him to have a detached sense of reality. According to the transcript, respondent seems to imply hospital staff intentionally switched his stool sample with another patient. Respondent also believes putting mirrors up around his house will deflect radioactivity, and that family members have tried to poison him.

Dr. Singla's testimony, plus the record as a whole, does substantiate respondent's inability to perform basic needs. Therefore, we are not left with a definite and firm conviction that a mistake had been made by the probate court, and it is not outside the range of reasonable and principled outcomes to conclude that respondent was a person requiring treatment pursuant to MCL 330.1401(1)(b).

## C. UNWILLING TO PARTICIPATE IN TREATMENT

Respondent next argues that the probate court erred by concluding he was a person requiring treatment because there was no evidence he was unwilling to participate in treatment and no evidence to show he presented as a substantial risk to himself or others pursuant to MCL 330.1401(1)(c). Under this subsection, the statute states:

> An individual who has mental illness, whose judgment is so impaired by that mental illness, and whose lack of understanding of the need for treatment has caused him or her to demonstrate an unwillingness to voluntarily participate in or adhere to treatment that is necessary, on the basis of competent clinical opinion, to prevent a relapse or harmful deterioration of his or her condition, and presents a substantial risk of significant physical or mental harm to the individual or others.

-4-

Respondent ignores Dr. Singla's testimony, where Dr. Singla stated respondent did not understand his schizophrenia diagnosis and refused to take his medication. Respondent also claimed he had cancer and needed to be treated for that rather than for paranoid schizophrenia. Additionally, respondent testified that he does not believe he has schizophrenia and only "marginally" suffers from mental illness. Respondent also testified that he does not need to take antipsychotics.

Dr. Singla's and respondent's testimony together show respondent is unwilling to participate in treatment, which may result in physical or mental harm to respondent himself or others. Because of this, we are not definitely and firmly convinced that a mistake had been made when the probate court, nor is it outside the range of reasonable and principled outcomes to conclude that respondent was a person requiring treatment pursuant to MCL 330.1401(1)(c).

## IV. ENSURING A JURY TRIAL

Next, respondent argues he was not ensured a jury trial, and did not knowingly waive his right to a jury trial. Again, we disagree.

Under the Mental Health Code, respondent has the right to a hearing before a judge or jury. *In re KB*, 221 Mich App 414, 417; 562 NW2d 208 (1997). Specifically, MCL 330.1453(2) requires:

> Within 4 days of the court's receipt of the documents described in section 452(1)(a), the court shall cause the subject of the petition to be given a copy of the petition, a copy of each clinical certificate executed in connection with the proceeding, notice of the right to a full court hearing, notice of the right to be present at the hearing, notice of the right to be represented by legal counsel, notice of the right to demand a jury trial, and notice of the right to an independent clinical evaluation.

The deadline for invoking that right is provided by MCR 5.740(B): "An individual may demand a jury trial any time before testimony is received at the hearing for which the jury is sought." This standard is mirrored by MCL 330.1458, which states that "[t]he subject of a petition may demand that the question of whether he requires treatment or is legally incompetent be heard by a jury."

The parties agree that respondent did not demand a jury trial before his hearing, and he did not object to the bench trial until this appeal. On December 15, 2021, i.e., the day after the bench trial, respondent submitted a correspondence to the probate court that requested a jury trial. On appeal, respondent argues that he did not knowingly waive his right to a jury trial.

MCR 5.740(B) and MCL 330.1458 are clear that an individual *may demand* a jury trial, but it is not an assumed demand. Furthermore, the Michigan Constitution states that the right to a jury trial "shall be waived in all civil cases *unless demanded by one of the parties in the manner prescribed by law*." Const 1963, art 1, § 14 (emphasis added). There is no evidence in the record to demonstrate that respondent demanded a jury trial until after his bench trial.

Respondent argues that MCL 330.1458 does not prescribe a time limit for when he can request a jury trial, and he argues, without citation, that MCL 330.1458 would control over MCR 5.740(B). However, respondent "ignores the fact that it is settled that our Supreme Court is the final arbiter of all matters of practice and procedure in the courts of this state." *In re Contempt of*

*Henry*, 282 Mich App 656, 667; 765 NW2d 44 (2009).  Furthermore, "[i]n instances in which a statute and a specific court rule conflict, the court rule prevails."  *Id.* (emphasis added) (citation omitted).  Respondent's argument is without merit because MCR 5.740(B) requires that respondent must demand a jury trial before testimony is taken.  Respondent's December 15, 2021 correspondence that requested a jury trial was untimely because it was filed after the bench trial and after testimony was taken.

Nevertheless, respondent argues that there is no evidence that he received the required notices under MCL 330.1453(2).  Respondent ignores that the record contains a "Notice of Hospitalization and Certificate of Service" that was signed to indicate service, and it demonstrated that respondent was provided notice regarding his hospitalization.  Additionally, the record contains a "Notice of Hearing on Petition for Hospitalization" that is signed to indicate service, and it informed him that he had the right to a jury trial.  That notice also informed respondent that Margaret E. Allen was appointed as his attorney.  Allen was the attorney who appeared and represented respondent at the hearing, and there was no demand for a jury trial.

Therefore, respondent's arguments regarding his late demand for jury trial are without merit.  It was not outside the range of reasonable and principled outcomes for the probate court to conduct a bench trial when respondent did not demand a jury trial.

## V.  ABILITY TO CALL WITNESSES

Lastly, respondent argues that the probate court erred because it did not ensure his witnesses were able to testify pursuant to MCR 2.407(G).  Specifically, respondent argues that he intended to call his father as a witness but was unable to do so.  He contends that the probate court did not comply with MCR 2.407(G)(1), which states that the probate court is required to use remote participation technology "to the greatest extent possible" and must "[v]erify that participants are able to proceed remotely, and provide reasonable notice of the time and format of any such hearings for parties, other participants, and the general public in a manner most likely to be readily obtained by those interested in such proceedings."  Again, we disagree.

During the hearing, respondent called himself as a witness, and when he was done testifying, the probate court asked respondent if he had any other witnesses to call.  Respondent's counsel answered that there were no other witnesses he would like to call.

The only indication in the record that respondent wanted to call an additional witness is his December 15, 2021 correspondence that he filed after the hearing, in which he stated that "my witness was kicked off Zoom."  There is no other evidence in the record to indicate that respondent wanted to call his father to testify on his behalf.  There is nothing recorded at the hearing that indicates that any witnesses were having trouble trying to log into the video conferencing technology, and respondent affirmatively stated that there were no other witnesses that he wanted to call to testify.  Furthermore, respondent has not presented any affidavit or any other evidence on appeal to even suggest that his father was willing to testify at the hearing.  Therefore, the probate court did not err when it accepted respondent's affirmation that he had no other witnesses to call.

## VI. CONCLUSION

We find no error in the trial court's finding that respondent was a person requiring treatment pursuant to the Mental Health Code. We also find no error by the probate court regarding respondent's contended rights to demand a jury trial and to call a witness.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Michael J. Kelly
/s/ Christopher P. Yates