13-3191-cv, 14-2301-cv (L), 14-2937-cv(XAP), 15-3978
SEC v. Frohling, SEC v. Sourlis

# UNITED STATES COURT OF APPEALS

# FOR THE SECOND CIRCUIT

## S U M M A R Y   O R D E R

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse at Foley Square, in the City of New York, on the 8th day of November, two thousand sixteen.

Present: AMALYA L. KEARSE,
         ROSEMARY S. POOLER,
         CHRISTOPHER F. DRONEY,
                        Circuit Judges.
_____

SECURITIES AND EXCHANGE COMMISSION,

                        Plaintiff-Appellee,

                 - v. -                          No. 13-3191-cv

JOHN B. FROHLING,
                        Defendant-Cross-Claimant-Cross-Defendant-
                        Appellant,

HISAO SAL MIWA,
                        Defendant-Cross-Claimant-Cross-Defendant,

VIRGINIA K. SOURLIS,
                        Defendant-Cross-Claimant,

DANIEL D. STARCZEWSKI, JOE V. OVERCASH, JR., FRANK J. MORELLI, III, THOMAS F. PIERSON,

Defendants-Cross-Defendants,

ACTIVE STEALTH, LLC, BAF CONSULTING, INC., BLUEWATER EXECUTIVE CAPITAL, LLC, EMERGING MARKETS CONSULTING, LLC, KCS REFERAL SERVICES, LLC, MBA INVESTORS, LTD., NEW AGE SPORTS, INC., POWER NETWORK, INC., PROJECT DEVELOPMENT, INC., SEVILLE CONSULTING, INC., STARR CONSULTING, INC., TUSCANY CONSULTING, INC., YT2K, INC.,

Relief-Defendants-Cross-Defendants,

GREENSTONE HOLDINGS, INC., JAMES S. PAINTER, III,

Defendants.
_____
_____

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff-Appellee-Cross-Appellant,

- v. -        Nos. 14-2301-cv(L), 14-2937-cv(XAP), 15-3978-cv

VIRGINIA K. SOURLIS,

Defendant-Cross-Claimant-Appellant-Cross-Appellee,

JOHN B. FROHLING, HISAO SAL MIWA,

Defendants-Cross-Claimants-Cross-Defendants,

DANIEL D. STARCZEWSKI, THOMAS F. PIERSON,

Defendants-Cross-Defendants,

GREENSTONE HOLDINGS, INC., JOE V. OVERCASH, JR., FRANK J. MORELLI, III, JAMES S. PAINTER, III,

Defendants,

ACTIVE STEALTH, LLC, BAF CONSULTING, INC., BLUEWATER EXECUTIVE CAPITAL, LLC, EMERGING MARKETS CONSULTING, LLC, KCS REFERAL SERVICES, LLC, MBA INVESTORS, LTD., NEW AGE SPORTS, INC., POWER

2

NETWORK, INC., PROJECT DEVELOPMENT, INC., SEVILLE CONSULTING, INC., STARR CONSULTING, INC., TUSCANY CONSULTING, INC., YT2K, INC.,

<u>Relief-Defendants</u>.

_____

For Plaintiff-Appellee
in No. 13-3191:               ALLAN A. CAPUTE, Special Counsel to the Solicitor, Washington, D.C. (Anne K. Small, General Counsel, Michael A. Conley, Deputy General Counsel, Jacob H. Stillman, Solicitor, Securities and Exchange Commission, Washington, D.C., on the brief).

For Defendant-Cross-Claimant-
Cross-Defendant-Appellant
in No. 13-3191:               JOHN B. FROHLING, <u>pro se</u>, Jersey City, N.J.

Appeal from the United States District Court for the Southern District of New York.

ON CONSIDERATION WHEREOF, it is now hereby ordered, adjudged, and decreed that in No. 13-3191, the November 25, 2015 judgment of said District Court be and it hereby is AFFIRMED.[*]

In this appeal, which was reinstated following a remand for final resolution of pending claims, <u>see</u> <u>SEC v. Frohling</u>, 614 F. App'x 14 (2d Cir. 2015), defendant-cross-claimant-cross-defendant-appellant John B. Frohling <u>pro se</u> appeals from a November 25, 2015 Superseding Final Judgment of the United States District Court for the Southern District of New York, Miriam G. Cedarbaum, <u>Judge</u>, in this enforcement action brought by the Securities and Exchange Commission ("SEC") in connection with public offerings of unregistered shares of stock of defendant Greenstone Holdings, Inc. ("Greenstone"). The district court granted a motion by the SEC for summary judgment on issues of liability, holding Frohling--who as Greenstone's securities counsel in 2006-2008 wrote, approved, or concurred in 11 opinion letters relating to all of the relevant offerings--liable for violating § 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a); § 5 of the Securities Act, 15 U.S.C. § 77e; and § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5. The Superseding Final Judgment orders Frohling to pay a total of $204,161.86 as a civil penalty, disgorgement, and prejudgment interest, and permanently bars him from participating in so-called "penny stock" offerings, <u>i.e.</u>, offerings of "any equity security that has a price of less than five dollars, except as provided in Rule 3a51-1 under the Exchange Act," Superseding Final Judgment at 4.

On appeal, Frohling contends principally that he had no knowledge that the opinion letters he issued, approved, or concurred in were false, nor any knowledge of facts to alert him that the opinion letters were false, and that the district court erred in ruling that there was no genuine issue to be tried as

_____

[*]     The other appeals with which No. 13-3191 was consolidated have been resolved.

3

to his knowledge. For the reasons that follow, we find no basis for reversal. We assume the parties' familiarity with the underlying facts and procedural history of the case.

A. Liability

Section 5 of the Securities Act makes it unlawful, directly or indirectly, to publicly offer or sell unregistered stock, see 15 U.S.C. § 77e, unless the offering is covered by an exemption. The stock certificate for unregistered shares not covered by an exemption--"restricted" stock--normally bears a legend stating that the shares have not been registered and cannot lawfully be sold until they are registered. The pertinent exemption in this case, as it existed at the relevant time, allowed stock to be issued without the restricted-stock legend if the recipients were persons unaffiliated with the stock's issuer at the time of the sale or during the preceding three months, and if at least two years had elapsed since the shares were owned by the issuer or a person affiliated with the issuer, see SEC Rule 144(k), 17 C.F.R. § 230.144(k) (2005) ("Rule 144(k) exemption"). The two-year requirement was satisfied if unaffiliated persons acquired the shares in exchange for "consideration consisting solely of other securities of the same issuer" that had been received at least two years earlier, as the shares were deemed to have been acquired from the issuer at the time the surrendered securities had been acquired. Id. § 230.144(d)(3)(ii) (2005) (emphasis added). "To state a cause of action under Section 5, one must show '(1) lack of a [required] registration statement as to the subject securities; (2) the offer or sale of the securities; and (3) the use of interstate transportation or communication and the mails in connection with the offer or sale.'" SEC v. Cavanagh, 445 F.3d 105, 111 n.13 (2d Cir. 2006) (quoting Europe & Overseas Commodity Traders, S.A. v. Banque Paribas London, 147 F.3d 118, 124 n.4 (2d Cir. 1998)). A person not directly engaged in transferring title of the security can be held liable under § 5 if he or she "engaged in steps necessary to the distribution of [unregistered] security issues." SEC v. Chinese Consolidated Benevolent Ass'n, 120 F.2d 738, 741 (2d Cir. 1941).

Section 10(b) of the Exchange Act and Rule 10b-5, which prohibit fraud in the purchase or sale of a security, are violated if a person has "'(1) made a material misrepresentation or a material omission as to which he had a duty to speak, or used a fraudulent device; (2) with scienter; (3) in connection with the purchase or sale of securities.'" SEC v. Pentagon Capital Management PLC, 725 F.3d 279, 285 (2d Cir. 2013) (quoting SEC v. Monarch Funding Corp., 192 F.3d 295, 308 (2d Cir. 1999)), cert. denied, 134 S. Ct. 2896 (2014). A false statement was made with the requisite scienter if it was made with the "intent to deceive, manipulate, or defraud." SEC v. Obus, 693 F.3d 276, 286 (2d Cir. 2012) (internal quotation marks omitted). "[S]cienter may be established through a showing of reckless disregard for the truth, that is, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care." Id. (internal quotation marks omitted).

The elements of a claim under § 17(a) of the Securities Act, which prohibits fraud in the "offer or sale" of a security, 15 U.S.C. § 77q(a), are "[e]ssentially the same" as the elements of claims under § 10(b) and Rule 10b-5. SEC v. Monarch Funding Corp., 192 F.3d at 308.

Summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists when the evidence is such that, if the party against whom summary judgment is sought is given the benefit of all permissible inferences and all credibility assessments, a rational factfinder could resolve all material factual issues in favor of that party. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is appropriate when "there can be but one reasonable

4

conclusion as to the verdict," id. at 250, i.e., "it is quite clear what the truth is," Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467 (1962) (internal quotation marks omitted), and no rational factfinder could find in favor of the nonmovant. We review the district court's grant of summary judgment de novo, applying the same standards that govern the district court's consideration of the motion. See, e.g., Aulicino v. New York City Department of Homeless Services, 580 F.3d 73, 79 (2d Cir. 2009).

It is undisputed that the Greenstone shares in question were not registered. It is undisputed that Frohling wrote, approved, or concurred in 11 opinion letters relying explicitly or implicitly on the Rule 144(k) exemption, stating that the shares could lawfully be transferred to the recipients as unrestricted shares on the ground that they were acquired by persons unaffiliated with Greenstone solely in exchange for other Greenstone securities they had received more than two years earlier. The record shows that Frohling himself wrote eight of these letters; six of the eight expressly cited the Rule 144(k) exemption; and Frohling subsequently wrote a letter revising the other two to invoke the Rule 144(k) exemption expressly. It is undisputed that those statements were untrue. For example, certain owners--the "Morelli Group"--which purported to be receiving the to-be-offered shares from Greenstone in exchange for old convertible promissory notes agreed that at least half of the proceeds from the sale of the shares would be paid to Greenstone, thus making it false to represent that the Morelli Group was acquiring the to-be-offered shares "solely" in exchange for the promissory notes. Frohling nonetheless wrote or approved opinion letters stating, inter alia, that the unregistered Greenstone shares "may be issued without restriction" (Frohling letter dated August 31, 2006) and without a legend identifying them as restricted shares. Public offerings of the shares ensued, and the district court concluded that Frohling's participation in those unlawful offerings was substantial because without those opinion letters, Greenstone's transfer agent "would not have issued any unregistered shares." SEC v. Greenstone Holdings, Inc., No. 10 Civ. 1302, 2012 WL 1038570, at *11 (S.D.N.Y. Mar. 28, 2012) ("Greenstone I"). Frohling has provided no basis for disturbing that conclusion. We affirm the ruling that Frohling violated § 5 substantially for the reasons stated by the district court in Greenstone I.

With respect to the SEC's fraud claims against Frohling under § 17(a), § 10(b), and Rule 10b-5, Frohling challenges the propriety of summary judgment, arguing, as he did below, that he did not know the 11 opinion letters' representations--that Greenstone shares to be offered to the public were exempt under Rule 144(k) from the registration requirement--were false and that his knowledge could not be determined as a matter of law. The district court concluded that no rational factfinder could fail to find that Frohling knew of, inter alia, the Morelli Group's agreement to share the proceeds of the offerings with Greenstone:

> [A]s to the letters Frohling wrote, the record contains numerous e-mails sent by Miwa [defendant Hisao Sal Miwa, Greenstone's founder and chief officer] to Frohling in which Miwa discusses the Morelli Group's plan to sell shares to the public and remit the proceeds to Greenstone. Miwa explicitly states that portions of the shares were to be used for "funding the company," that is, in exchange for new consideration. Furthermore, Frohling admitted at his deposition that he knew of the Morelli Group's commitment to transfer to Greenstone at least half of the proceeds of the public sale of the unregistered shares. Thus, he knew that the shares were being improperly sold for new consideration.

Greenstone I, 2012 WL 1038570, at *6 (emphases added).

5

In addition, Frohling wrote two of his false opinion letters to receive unrestricted shares himself, in exchange for a promissory note. Frohling opined that the Rule 144(k) exemption applied, despite knowing that it did not because, inter alia, he had received the note less than the required two years earlier. See id. at *4. As to one such letter, "[t]he undisputed facts show that Frohling received 10 million Greenstone shares as a result of th[e] opinion letter and shortly thereafter sold at least 2.9 million of those shares." Id. at *7.

The court also found that Frohling fraudulently approved of a January 11, 2006 opinion letter by defendant Virginia K. Sourlis ("Sourlis Letter") leading to the issuance of more than 6 million Greenstone shares as unrestricted stock. See id. at *3. Sourlis opined that the shares could lawfully be issued as unrestricted shares because the recipients were acquiring them in exchange for certain convertible notes. See id. In her letter, Sourlis stated that she was relying on "information and representations furnished by . . . the Original Note Holders to me," and that "I have been informed by the Original Note Holders" that none of them were affiliated with the issuer and that the Original Note Holders had owned the notes for at least two years. (Sourlis Letter at 2.) The record established, however, that "the convertible notes described by Sourlis did not even exist." SEC v. Greenstone Holdings, Inc., 954 F.Supp.2d 211, 213 (S.D.N.Y. 2013) ("Greenstone II"). Frohling concurred in the Sourlis Letter, and 6,150,000 shares were issued as unrestricted shares under the claim of a Rule 144(k) exemption for convertible promissory notes that in fact did not exist, allowing the shares to be sold to the public although unregistered. Because the notes did not exist, many of the statements in the Sourlis Letter were necessarily false. See id. The district court found that "Frohling adopted Sourlis's statement[s] in full[,] . . . even though he knew the true facts." Greenstone I, 2012 WL 1038570, at *3.

Although Frohling argues that there was a fact issue to be tried because he testified in deposition that he did not know the opinion letters he wrote, approved, or concurred in were false in their statements that the Rule 144(k) exemption applied, it is indisputable that he also admitted in that deposition that he knew that the Morelli Group had agreed to share the proceeds of the offerings with Greenstone. Given that admission, together with the documentary evidence consisting of emails sent to him stating that Greenstone was to receive part of the proceeds of the offerings, we see no error in the district court's conclusion that Frohling's later testimony that he did not know that fact did not create an issue that was genuine.

We conclude that the record was ample to support the district court's determination that there was no genuine issue to be tried as to Frohling's knowledge that the representations as to the applicability of the Rule 144(k) exemption were false, and to support its conclusion that Frohling violated § 17(a) of the Securities Act, § 10(b) of the Exchange Act, and Rule 10b-5 because the opinion letters he wrote, approved, or concurred in "all falsely claimed registration exemptions under Rule 144(k)," Greenstone I, 2012 WL 1038570, at *6.

B. Relief
Finally, we reject Frohling's challenges to the relief ordered by the district court, i.e., disgorgement, prejudgment interest, civil penalties, and injunctive relief. "Once the district court has found federal securities law violations, it has broad equitable power to fashion appropriate remedies . . . ." SEC v. First Jersey Securities, Inc., 101 F.3d 1450, 1474 (2d Cir. 1996) ("First Jersey"), cert. denied, 522 U.S. 812 (1997).

"The primary purpose of disgorgement as a remedy for violation of the securities laws is to deprive violators of their ill-gotten gains, thereby effectuating the deterrence objectives of those laws." Id. Prejudgment interest may be awarded on sums ordered disgorged in order to fully compensate the wronged party for actual damages suffered. See, e.g., id. at 1476. Civil monetary penalties are authorized by the Securities Act and the Exchange Act for both deterrent and punitive purposes. See, e.g., SEC v. Razmilovic, 738 F.3d 14, 38-39 (2d Cir. 2013). And injunctive relief is

> particularly within the court's discretion where a violation was founded on systematic wrongdoing, rather than an isolated occurrence, . . . and where the court views the defendant's degree of culpability and continued protestations of innocence as indications that injunctive relief is warranted, since "persistent refusals to admit any wrongdoing ma[k]e it rather dubious that [the offenders] are likely to avoid such violations of the securities laws in the future in the absence of an injunction."

First Jersey, 101 F.3d at 1477 (quoting SEC v. Lorin, 76 F.3d 458, 461 (2d Cir. 1996) (other internal quotation marks omitted) (emphases ours)). The court's choice of remedies is reviewed for abuse of discretion. See, e.g., First Jersey, 101 F.3d at 1474-77; SEC v. Contorinis, 743 F.3d 296, 301 (2d Cir. 2014), cert. dismissed, 136 S. Ct. 531 (2015).

We see no abuse of discretion here, given the record in this case as to the moneys received by Frohling either through fees received by him or his firm for his fraudulent opinion letters or received by Frohling personally from an unlawful stock offering, and given Frohling's continued manifestation of a lack of concern for his responsibilities under the federal securities laws. (See, e.g., Hearing Transcript, March 21, 2013, at 6-8, 9-10 (Frohling's acknowledgement that he did not "say anywhere in [his 11 written or endorsed] opinion [letters] that" his opinion "was not based on any personal knowledge of [his own]" and that he was "simply relying on the opinions of other people"; and his continued insistence that he was entitled to give, approve, and concur in the opinions he gave without knowing, and without investigating to find out, whether they were true or false).)


CONCLUSION

We have considered all of Frohling's arguments on this appeal and have found in them no basis for reversal. The district court's Superseding Final Judgment against Frohling is affirmed.


FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court